# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

---

In re:

Joseph F. Niece,

    Debtor.

BKY No. 08-46265
ADV No. 09-_____

---

Randall L. Seaver, Trustee

    Plaintiff,

vs.

Joseph F. Niece,

    Defendant.

**COMPLAINT**

---

Plaintiff, for his Complaint against Defendant Joseph F. Niece, states and alleges as follows:

1. Randall L. Seaver is the duly qualified and acting Trustee in this case.

2. This is an action seeking a denial of the discharge of the Debtor pursuant to 11 U.S.C. §727.

3. This Court has jurisdiction over this proceeding pursuant to 11 U.S.C. §727, 28 U.S.C. §157 and 28 U.S.C. §1334.

4. This case was commenced by the filing of a voluntary petition under Chapter 7 on December 3, 2008. The date by which an objection to discharge had to be filed in this case is March 2, 2009.

5. The Defendant knowingly and fraudulently, and in connection with this bankruptcy case made material omissions, false oaths and accounts in his schedules and statement of financial affairs and elsewhere including, but not limited to, the following:

    a. At Schedule A, the Debtor stated that he owned a marital interest in a home purchased by his spouse and her mother in June, 2008 which was subject to a mortgage loan of $365,000. The Debtor, a licensed real estate agent placed a scheduled value on the home of $350,000. The value stated was false, as the Debtor knew, because the purchase price for the home in June, 2008 was $445,000. While the Debtor provided no address nor legal description for the home purportedly purchased by his spouse and mother, the address of that home is 4445 Margaret Circle, Minnetrista, MN ("Minnetrista Property").

    b. The Debtor's petition, which stated his address as 10195 Gristmill Ridge, Eden Prairie, MN was false. In truth, the Debtor was living at the Minnetrista Property with his spouse.

    c. The Debtor's Schedule B falsely stated that he had unpaid wages and tax refunds having a value of $2,000. In truth, the Debtor had $8,500 in earned but unpaid pre-petition wages, and had a 2007 joint federal tax and property tax refunds receivable an amount in excess of $5,500.

    d. In Schedule B, the Debtor did not disclose his ownership of a boat and motor and trailer which he had in his possession at the time of filing.

    e. In 2008, the Debtor owned a 1995 Jaguar. An insurance loss on the Jaguar was suffered in 2008 and, upon information and belief, in early 2008 the Debtor received insurance proceeds as a result of that loss. No disclosure of the receipt of those monies is made at item 8 of the statement of financial affairs, nor is there any disclosure of the loss itself.

    f. On or about July 31, 2007, the Debtor sold real property located in Manvel, ND for the sum of $100,000. The Debtor did not disclose that transfer at item 10 of the statement of financial affairs.

    g. According to the 2007 tax return filed by the Debtor in October, 2008, the Debtor and his non-filing spouse were entitled to a $1,500 economic stimulus rebate. That rebate entitlement is not disclosed in Schedule B.

    h. At item 1 of the Debtor's statement of financial affairs, it is stated that Debtor had $56,800 income from his employment in 2007. That statement is false. According to the Debtor's tax return, his income was $34,200.

According to his 2007 tax return, he had capital gains on the concealed sale of North Dakota property, in the amount of $22,646.

i. At item 2 of the statement of financial affairs, the Debtor states that he had no income other than from employment or operation of business in the two years prior to commencement of this case. That statement is false. The Debtor had at least $22,646 in capital gains in 2007.

j. At item 3 of the statement of financial affairs, the only payment disclosed by the Debtor in the 90 days prior to filing were monthly $500 payment to USAA Mastercard. Upon information and belief, that statement is false.

k. At item 3(c) of the statement of financial affairs, the Debtor stated that he had made no payments in the year prior to filing for the benefit of creditors who are or were insiders. That statement is false because, during that item period, the Debtor made at least the following payments:

   (1) The Debtor made payments on a Capital One card held solely by his spouse, Angela Niece.
   (2) The Debtor made payments on an HSBC card held solely by his spouse, Angela Niece.
   (3) On or about 6/24/08, the Debtor made a payment of $1,500 to Tom or Karla Iberson as payment of rent for the benefit of Angela Niece.
   (4) Debtor paid private school expenses for his children.
   (5) The Debtor transferred funds, by check to Angela Niece.

l. At Schedule I, the Debtor stated that he had no average monthly income. That statement was false.

m. At Schedule J, the Debtor stated, at item 14, that he had no alimony, maintenance or support payments. That statement was false. Debtor is required to assist with his children's expenses, maintain life insurance and other obligations.

n. At item 8 of the Schedule B, the Debtor stated that he had no firearms, sports, photographic or other hobby equipment. That statement was false.

o. At item 13 of Schedule B, the Debtor stated that he had no stock or interests in incorporated and unincorporated businesses. That statement, in combination with items 14 and 35 of Schedule B was false. The Debtor was engaged in the real estate sales business under the trade name of "The Joe Niece Team." The Debtor has spent substantial sums of money advertising and developing "The Joe Niece Team" concept and trade name. At the time this bankruptcy case was filed, advertising was continuing for homes that were for sale by "The Joe Niece Team." There

is no disclosure in Schedule B, nor at item 18 of the statement of financial affairs of the Debtors involvement with, interest in or ownership of "The Joe Niece Team." Exhibit A evidences that Debtor and "The Joe Niece Team" were the number four realtors for Re/Max (in this region) for 2008, and that Joe Niece is a member of the 2008 Re/Max chairman's club award which is awarded to the top 1% of agents.

    p.    At item 23 of Schedule B, the Debtor stated that he did not own any licenses or other general intangibles. That statement was false because he was a licensed real estate agent, and was the owner of or had an interest in "The Joe Niece Team" which was in operation and conducting business at the time the Debtor filed bankruptcy.

    q.    At Schedule F, the Debtor stated that he owed George and Susan Niece $88,000. That statement was false.

    r.    E-Global Solutions is a company owned by the Debtor's brother, George Niece. At Schedule F, the Debtor stated that he owed E-Global Solutions $286,400. That statement was false.

    s.    Debtor's form B22A is false in that he is not separated from his wife.

6.    At the original §341 meeting conducted on January 9, 2009 the Debtor knowingly and fraudulently offered false testimony including, but not limited to, the following:

    a.    The Debtor testified that the petitions, schedules and statements in this case are true and correct. That testimony was false as indicated by paragraph 5 hereof.

    b.    The Debtor testified that there were no errors or omissions in the schedules and statement of financial affairs. That testimony was false.

    c.    The Debtor testified that, other than the items listed at item 10 of the statement of financial affairs, and the North Dakota home there was no transfer of any property or interest in property to anyone in the two years prior to filing. That testimony was false as indicated by paragraph 5 hereof.

    d.    The Debtor testified that he had listed all of his assets in the schedules. That testimony was false as indicated by paragraph 5 hereof.

7. The §341 meeting was continued to January 29, 2009. At that continued §341 meeting, the Debtor knowingly and fraudulently offered false testimony including, but not limited to, the following:

    a. The Debtor was living at 10195 Gristmill Ridge.

8. On February 16, 2009, the Debtor filed an Amended Schedule B and C. The Defendant knowingly and fraudulently in connection with this bankruptcy case made material omissions false oaths and accounts in those schedules including, but not limited to, the following in his Amended Schedule B:

    a. The Amended Schedule B did not disclose the Debtor's entitlement to a 2007 joint federal and property tax refund in an amount in excess of $5,500.

    b. The Debtor's Amended Schedule B did not disclose, at item 23, that the Debtor is the holder of a real estate agent license.

9. The continued §341 meeting was concluded on February 17, 2009. The Debtor testified that the Amended Schedule B was true and correct. At that continued meeting the Debtor knowingly and fraudulently offered false testimony including, but not limited to, the following:

    a. The Debtor testified that the Amended Schedule B which he had filed on February 16, 2009 was true and accurate. That statement was false.

    b. The Debtor testified that there were no errors or omissions in the Amended Schedule B. That testimony was false.

    c. The Debtor testified that he had listed all of his assets in the Amended Schedule B. That testimony was false.

10. The Debtor transferred or concealed, or permitted to be transferred or concealed, with the intent to hinder, delay or defraud creditors or the estate, property including the following:

a. The 2005 Harley Davidson motorcycle, 1997 Mercury, 1986 Winnebago, and 2002 Cadillac which transfers were purportedly made on August 12, 2008 were transfers made by the Debtor with the intent to hinder, delay or defraud creditors.

b. After this bankruptcy case was filed, the Debtor received, at his post office box, a tax refund or rebate check. He deposited that check on January 8, 2009. On January 9, 2009, the Trustee told the Debtor that he was not to negotiate any tax refunds. The Debtor did not disclose to the Trustee that he had already negotiated the tax refund check. The Debtor did not voluntarily disclose the conversion of those monies until questioned by the Trustee about those monies on February 17, 2009, at which time he admitted that he had deposited the check.

WHEREFORE, the Trustee seeks an order of this Court granting the following relief:

1. Denying the discharge of Joseph F. Niece pursuant to the provisions of 11 U.S.C. §727 including §§727(a)(2), (a)(3); and (a)(4).

2. Such other and further relief as the court deems just and equitable.

**LEONARD, O'BRIEN**
**SPENCER, GALE & SAYRE, LTD.**

Dated: February 27, 2009

By /e/ Matthew R. Burton
_____
Matthew R. Burton, #210018
Attorneys for Randall L. Seaver, Trustee
100 South Fifth Street, Suite 2500
Minneapolis, Minnesota 55402-1216
(612) 332-1030

396810

## Minnesota Top 50 Teams in Transactions through December 2008

| Rank | Last Name | First Name | Company Name |
|---|---|---|---|
| 1 | O'Neill | Ryan | RE/MAX ADVANTAGE PLUS |
| 2 | White | Kyle | RE/MAX ADVANTAGE PLUS |
| 3 | Klick | Wade | RE/MAX RESULTS |
| 4 | Niece | Joe | RE/MAX RESULTS |
| 5 | Miles | Scott | RE/MAX REAL ESTATE PROPERTIES |
| 6 | Wollmering | Scott | RE/MAX RESULTS |
| 7 | Kawohl | John | RE/MAX RESULTS |
| 8 | Allen | Kent | RE/MAX REAL ESTATE PROPERTIES |
| 9 | Lockner | John | RE/MAX RESULTS |
| 10 | Snyder | Jennifer | RE/MAX RESULTS |
| 11 | Hedges | Brandon | RE/MAX RESULTS |
| 12 | Stockwell | Jason | RE/MAX RESULTS |
| 13 | Reidell | Robert | RE/MAX RESULTS |
| 14 | Perkins | Jon | RE/MAX RESULTS |
| 15 | Brooks | Charles | RE/MAX RESULTS |
| 17 | Sawyer | Thomas | RE/MAX RESOURCES |
| 18 | Johnson | Roxanne | RE/MAX SELECT PROPERTIES |
| 19 | Cummings | Andy | RE/MAX OF ROCHESTER |
| 20 | Monson | Robert | RE/MAX RESULTS |
| 21 | Schueller | Gary | RE/MAX OF ROCHESTER |
| 22 | Schafer | Matt | RE/MAX ADVANTAGE PLUS |
| 23 | Fiorella | Steven | RE/MAX RESULTS |
| 24 | Raygor | Joel | RE/MAX OF ROCHESTER |
| 25 | Hostetter | Greg | RE/MAX OF ROCHESTER |
| 26 | Boschee | Del | RE/MAX REALTY 1 |
| 27 | Nordaune | Beth | RE/MAX OF ROCHESTER |
| 28 | Walgrave | Jason | RE/MAX ADVANTAGE PLUS |
| 29 | Hanson Welu | Cindy | RE/MAX ACTION WEST |
| 30 | Ryan | Paul | RE/MAX PREFERRED |
| 31 | Bertelson | Todd | RE/MAX RESULTS |
| 32 | Cash | Steven | RE/MAX REALTY SOURCE |
| 33 | Ratzlaff-LaBeau | Colleen | RE/MAX ADVANTAGE PLUS |
| 34 | Congdon | Deena | RE/MAX LAKE COUNTRY |
| 35 | Ritter | Bob | RE/MAX RESULTS |
| 36 | Hansen | Steven | RE/MAX REALTY SOURCE |
| 37 | Armstrong | Frank | RE/MAX OF ROCHESTER |
| 38 | Cox | Bob | RE/MAX OF ROCHESTER |
| 39 | Maciel-Montes | Carlos | RE/MAX ADVANTAGE PLUS |
| 40 | Aplikowski | Peter | RE/MAX RESULTS |
| 41 | Jenkins | Michaelee | RE/MAX HOMES |
| 42 | Ames | Christopher | RE/MAX REALTY 100 |
| 43 | Mitchell | James | RE/MAX RESULTS |
| 44 | Thram | Rick | RE/MAX ADVANTAGE PLUS |
| 45 | Hermes | Wade | RE/MAX RESULTS |
| 46 | Kuyper | Robert | RE/MAX RESULTS |
| 47 | Rothmeier | Sue | RE/MAX BEYOND REAL ESTATE |
| 48 | Huls | Rachel | RE/MAX TODAYS REALTY |
| 49 | Jaunich | David | RE/MAX RESULTS |
| 50 | Johnson | Benjamin | RE/MAX RESULTS |



EXHIBIT A